UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LUDT, | ) | CASE NO. 4:07CV2089 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CITY OF YOUNGSTOWN, OHIO, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

The instant matter is before the Court on a motion for summary judgment filed by Defendants City of Youngstown, Ohio ("Defendant Youngstown"); Jay Williams ("Defendant Williams"), the Mayor of the City of Youngstown; and Michael Damiano, former Director of Demolition for the Housing Code Enforcement Division for the City of Youngstown ("Defendant Damiano")(collectively "Defendants"). ECF Dkt. #56. For the following reasons, the Court GRANTS the motion and dismisses Plaintiff's First Amendment retaliation and false arrest claims against Defendants with prejudice and dismisses Plaintiff's state law claims without prejudice. **I.**

**PROCEDURAL HISTORY**

On July 12, 2007, Plaintiff filed a complaint in this Court against Defendants alleging that he had been prosecuted by Defendant Youngstown on three occasions over three years "under the guise of nuisance abatement and/or enforcement of the International Property Maintenance Code (IPMC) for painting various political messages on his own commercial building." *Id*. at 1–2. Plaintiff averred that each of the prosecutions occurred after he exercised his right to free speech, which included openly criticizing Defendant Youngstown for: failing to take action against an illegal bar adjacent to his property which was operating in violation of City ordinances; initiating criminal nuisance actions against Plaintiff in retaliation for Plaintiff's open criticism of the City; and wrongfully arresting his long-time domestic partner. *Id*. at 2. Plaintiff further indicated that all three

of the prosecutions were resolved in his favor. ECF Dkt. #2.

In this complaint, Plaintiff averred that Defendant Williams was the Mayor of Youngstown at all times relevant to this action and Defendant Damiano was an employee of Defendant Youngstown. ECF Dkt. #2 at 3. He alleged causes of action pursuant to 42 U.S.C. § 1983 and Ohio law, including First Amendment claims of retaliation by the pursuit of criminal action against him for the content of speech that he had placed on the outside of his building. *Id*. at 3–5. Plaintiff also averred a § 1983 action for false arrest under the Fourth and Fourteenth Amendments of the United States Constitution for issuing an arrest warrant against him without probable cause which resulted in his false arrest and detention. *Id*. at 4. He also brought state claims of malicious prosecution, abuse of process and breach of contract. *Id*. at 4–5. Plaintiff sued Defendants Williams and Damiano in both their official and individual capacities. *Id*. at 2.

On December 9, 2007, Plaintiff, through counsel, filed a first amended complaint, listing only Defendants Youngstown, Williams and Damiano as defendants. ECF Dkt. #7. Plaintiff reiterated the facts and essentially made the same allegations against Defendants. *Id*.

On November 4, 2008, Plaintiff, pro se, filed a second amended complaint, this time adding Anthony Farris, an Assistant Prosecuting Attorney for the City of Youngstown, and Jay Macejko, Prosecutor for the City of Youngstown, as defendants. ECF Dkt. #28. This Court granted summary judgment in favor Attorneys Macejko and Farris on July 9, 2009. ECF Dkt. #60.

The motion before the Court at this time is a motion for summary judgment filed by Defendants Youngstown, Williams and Damiano on June 3, 2009. ECF Dkt. #56. As of today's date, Plaintiff has not filed a response to the motion for summary judgment.

## II.     STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

### III.  ANALYSIS

Where, as here, a motion for summary judgment is unopposed, the district court at a minimum must examine the motion to ensure that the moving party has discharged its initial burden of demonstrating the absence of a genuine issue of material fact. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 407 (6th Cir.1992); *see also* L.R. 7.1(d) ("Unless otherwise ordered by the Judicial Officer, each party opposing a motion must serve and file a memorandum in opposition within thirty (30) days after service of any dispositive motion. . . If a party opposing a motion was served with the motion under Fed. R. Civ. P. 5(b)(2)(C), (D), (E) or (F), three days shall be added to the prescribed period as provided in Fed. R. Civ. P. 6(d)."). The trial court must intelligently and

carefully review the legitimacy of the motion, considering the possibility of evidentiary misstatements by the moving party and keeping in mind the context in which the evidence arose. *Guarino*, 980 F.2d at 407.

Notwithstanding the foregoing, the trial court properly relies on the facts provided by the moving party once the court is satisfied that the movant has not misrepresented the facts as established by the record as a whole. *Guarino*, 980 F.2d at 404-09. The Sixth Circuit has explained that nothing in the Federal Rules of Civil Procedure or case law supports an argument that the district court must conduct its own probing investigation of the record in order to discover an issue of material fact when a summary judgment motion is unopposed. *Id*. at 405-06 (holding that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion"). Thus, the district court is justified in relying on uncontested facts set forth in a summary judgment motion. *Id*. at 404-09.

In this case, the Court has reviewed the motion of Defendants and applied the above-stated standard. In doing so, the Court finds that no genuine issue of material fact exists that would necessitate a trial.

### A. FIRST AMENDMENT RETALIATION CLAIMS–COUNTS I AND II

In Counts I and II, Defendants move for summary judgment on Plaintiff's First Amendment retaliation claims against them, asserting that one of the claims is barred by the statute of limitations, and the others are barred by qualified immunity and Plaintiff's inability to establish the essential elements of the claims, including the absence of retaliatory animus and probable cause in which to bring the underlying criminal charges against him. ECF Dkt. #56 at 14-18.

In Count I of his second amended complaint, Plaintiff alleges that "Defendants' intent in prosecuting Plaintiff criminally, in part, to intimidate him into ceasing to further his exercise his constitutionally protected free speech." ECF Dkt. #28 at 15. In Count II, Plaintiff avers that "Defendants arrested and charged Plaintiff criminally in retaliation to the content of his speech." *Id.* at 16. He also alleges that "Defendants'[sic] arrested and criminally prosecuted Plaintiff, in part, in retaliation for the content of the constitutionally protected free speech in which he had already

-4-

engaged." *Id.*

### 1. FIRST PROSECUTION

Defendant first asserts that as to Plaintiff's 2004 prosecution, the statute of limitations has expired and Plaintiff cannot bring a §1983 claim as to this prosecution. ECF Dkt. #56 at 15-16. This Court agrees. In §1983 actions, the Court applies the relevant state statute of limitations and tolling principles in order to determine if an action is timely filed. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights claims arising in Ohio, this Court applies Ohio Revised Code §2305.10, which requires that actions for personal injury be filed within the two-year statute of limitations. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996), citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Federal law, however, determines when a civil rights claim accrues, and the law in this Circuit indicates that the statute of limitations for a civil rights claim begins to run "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer*, 98 F.3d at 220, citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

Here, Defendants reference a journal entry from Youngstown Municipal Court concerning cases 04CRB2666, 04CRB2682 and 04CRB2685, the case numbers provided by Plaintiff in his amended complaint relating to this first prosecution. The journal entry, which Plaintiff submitted as an exhibit to a supplement to his response to a motion for judgment on the pleadings filed by Attorneys Farris and Macejko, indicates that on December 8, 2004, the court dismissed the charges against Plaintiff in the above-referenced municipal court case numbers. ECF Dkt. #51 at 6-7. Plaintiff himself indicates in his second amended complaint that the City Prosecutor agreed with his motion to dismiss these cases against him which had asserted largely First Amendment grounds. ECF Dkt. #28 at 6. Accordingly, Plaintiff knew or had reason to know by, at the latest, December 8, 2004 that "the act providing the basis of his [] injury" had occurred for purposes of the instant claim as to this first prosecution. Therefore, the statute of limitations under Ohio Revised Code §2305.10 began running on or about December 8, 2004. Plaintiff consequently had two years from then in which to file a §1983 action as to this prosecution. However, Plaintiff waited until July 12, 2007, over three years after this dismissal, in which to file his original complaint in this case.

For these reasons, the undersigned GRANTS summary judgment in favor of Defendants in the instant case with regard to the first prosecution of Plaintiff. ECF Dkt. #56.

### 2. SECOND AND THIRD PROSECUTIONS

Defendants Williams and Damiano assert that they are entitled to qualified immunity as to Plaintiff's First Amendment retaliation and false arrest claims because Plaintiff cannot establish the essential elements of these claims. ECF Dkt. #56 at 15-17. They contend that Plaintiff cannot show their direct involvement in the decision-making relating to Plaintiff's second and third prosecutions and he cannot show that they had retaliatory animus or a lack of probable cause for the underlying criminal charges lodged against him. *Id*. Defendants assert that because Plaintiff cannot establish the essential elements of his claims, a constitutional violation cannot be established and therefore they are entitled to qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit applies a three-part test in order to determine if qualified immunity applies:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[ ] show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Sample v. Bailey*, 409 F.3d 689, 694 (6th Cir. 2005), quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Since the first step in assessing qualified immunity is determining whether a constitutional violation has occurred, the Court must examine the elements that a plaintiff must establish in a prima facie case of First Amendment retaliatory prosecution.

The First Amendment protects speech relating to the criticism of public officials. *New York Times v. Sullivan*, 376 U.S. 254-269-270 (1964). "There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment." *McCurdy v. Montgomery Cty.*, 240 F.3d

512, 520 (6th Cir. 2001). Retaliation by public officials in response to such criticism forms a basis for liability under § 1983. *Id.*

In order to establish a First Amendment retaliation claim for engaging in constitutionally protected activity, a plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) the defendant's action injured the plaintiff in a way "likely [to] chill a person of ordinary firmness from" participating further in that activity; and (3) the protected speech or constitutionally protected activity motivated the defendant's adverse action. *Center for Bio-Ethical Reform, Inc. v. City of Springboro,* 477 F.3d 807, 821 (6th Cir. 2007), quoting *Block v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)(internal citations omitted). In addition, when asserting a claim of First Amendment retaliatory prosecution as Plaintiff does in this case, a plaintiff must also plead and prove a lack of probable cause for the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250 (2006).

In *Hartman v. Moore*, 547 U.S. 250, 252 (2006), the United States Supreme Court resolved a split among Circuits and held that a plaintiff who asserts a *Bivens* or § 1983 claim against nonprosecutor officials for inducing prosecution for exercising his First Amendment rights must plead and prove a lack of probable cause for the underlying criminal charge in addition to the above elements in order to sustain his First Amendment retaliation claim. Hartman had alleged in his *Bivens* claim that the prosecutor and postal inspectors engineered his criminal prosecution in order to retaliate against him for his criticism of the Postal Service. 547 U.S. at 254. The Court held that "a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity beyond the charging decision, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)(emphasizing that 'so long as the prosecutor has probable cause," the charging decision is generally discretionary'), and enough for a prima facie case inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge." 547 U.S. at 265.

In *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit applied *Hartman* to its case, even though the concerns regarding the intervening actions of a prosecutor that were present in *Hartman* were not present in its case because conservation officers themselves initiated grand jury

proceedings against the plaintiff. 449 F.3d at 720. The *Barnes* Court found that *Hartman* applied more broadly since the Supreme Court had noted that causation in retaliatory- prosecution cases is usually more complex than in other retaliation cases. *Id*., quoting *Hartman*, 547 U.S. at 252. The Sixth Circuit found that the issuance of an indictment against Barnes conclusively determined the existence of probable cause, as did the jury's conviction of him on wanton endangerment which included an instruction that Barnes pointed a gun at the conservation officer and he thereby wantonly created a substantial danger of physical injury to the officer. *Barnes*, 449 F.3d at 716-717. The Court therefore held that Barnes's First Amendment retaliation claim failed as a matter of law because probable cause existed for the underlying criminal charges against him. *Id*. at 720.

In *Williams v. Carl Junction, Missouri*, 480 F.3d 871 (8th Cir. 2007), the Eighth Circuit Court of Appeals relied upon *Barnes* when it applied the *Hartman* probable cause bar to a plaintiff's First Amendment retaliation claims against the city mayor and others who had allegedly induced enforcement officers to issue twenty-six municipal citations in two years in retaliation for his First Amendment speech criticizing the City at public meetings and yelling profanity and making obscene gestures at officials. *Id.* The Eighth Circuit agreed with *Barnes* that the *Hartman* holding was broad enough to apply even without the intervening actions of a prosecutor and found that the plaintiff had to show "not only that the Mayor harbored retaliatory animus against him as a result of his protected speech and thus sought to induce prosecution through the issuance of the citations, but also that the Mayor succeeded- that is, that the issuance of the citations would not have occurred without the Mayor's improper motive." *Id*. The *Williams* Court held:

> As explained in *Hartman*, the absence of probable cause would serve to "bridge the gap" in these circumstances between the Mayor's retaliatory animus and the officers' "prosecution." *Hartman*, 126 S.Ct. at 1706. Conversely, the presence of probable cause would necessarily eliminate the possibility that a causal link between the Mayor's retaliatory animus and the officers' "prosecution" could be established. *Id.*

The *Williams* Court found that for all but one of the citations, Williams failed to argue a lack of probable cause and probable cause existed by virtue of Williams' admission of engaging in the conduct leading to the citation or admitted that an officer personally observed him engaging in the conduct before issuing the citations.

Accordingly, pursuant to *Hartman* and *Barnes*, Plaintiff must plead and prove that probable

-8-

cause was lacking for the charges that were brought against him. If probable cause exists, it will bar Plaintiff's First Amendment retaliation claims.

In his second amended complaint, Plaintiff alleges that he, his counsel and "the new administration" for the City of Youngstown met in April of 2006 and came to an agreement relating to the second prosecution whereby "[t]he City would dismiss the pending charge against Plaintiff and Plaintiff would 'contact [the City Prosecutor's] Office in the future to voice his concerns prior to utilizing [his] building in any form of protest." ECF Dkt. #28 at 8. Plaintiff further avers that "[d]uring the meeting between Plaintiff and City Prosecutor, the City Prosecutor indicated that it was Mayor Williams' strong preference to continue prosecuting Plaintiff, but that the City Prosecutor was able to persuade the Mayor to settle the case." *Id.*

As to his third prosecution, Plaintiff alleges that "[u]pon information and belief, Plaintiff understands that the mayor, Defendant Jay Williams, ordered the law department to arrange for Damiano to swear the complaint and for the law department to seek the issuance of Plaintiff's arrest warrant, as evinced by the City Prosecutor's comments to Plaintiff in their conversation during their April, 2006, meeting." ECF Dkt. #28 at 11. He also mentions that Defendant Williams's name was listed as a sponsor of a project which had a lettering on the Environmental Art Project that was in "flagrant violation" of the Youngstown ordinance under which he had been cited. *Id.* at 13. Plaintiff further alleges that as the head of the executive branch of the City of Youngstown, "the Mayor is vested with the authority to make official policy regarding whether to prosecute someone based upon their alleged violation of a city ordinance. Accordingly, the mayor ie[sic] the final policy making authority for the City in such matters." *Id*. at 14.

As against Defendant Damiano, Plaintiff avers that he had a conversation with him on or about November 1, 2006 in which Defendant Damiano told him that he swore out the complaint against him because the City Law Department told him to do so and that it was based upon the content of the message that Plaintiff had painted on his building. ECF Dkt. #28 at 11. Plaintiff further alleges that the conversation that he had with Defendant Damiano on that day "clearly indicated that Damiano swore out the complaint, in part, for the purpose of punishing Plaintiff for his free speech activities, to deter Plaintiff from further exercise of his free speech rights, and to

-9-

cause Plaintiff to incur significant costs related to hire an attorney to defend j=him[sic] against the charges." *Id*.

The Court GRANTS summary judgment in favor of Defendants Williams and Damiano because Plaintiff cannot show that probable cause was lacking in which to bring the charges against him in the second and third prosecutions and in fact, probable cause existed for the underlying charges in both prosecutions. Therefore, his First Amendment retaliation claims fail as a matter of law and Defendants Williams and Damiano are entitled to qualified immunity as to these claims.

The United States Supreme Court has described probable cause as "the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information" that are sufficient to warrant a prudent man in believing that a municipal ordinance has been violated. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The *Williams* Court noted that applying *Hartman* to defeat a plaintiff's claim does not require that a charge lead to a conviction, but only requires that the charge be supported by probable cause. 480 F.3d at 877, fn4.

Here, Plaintiff offers no showing that probable cause was lacking in which to bring the charges against him in the second and third prosecutions. Further, the Court finds that probable cause existed with which to file charges against Plaintiff. The complaint filed in the Youngstown Municipal Court on September 16, 2005 states that Plaintiff violated section 302.9 of the IMPC as incorporated into the Youngstown Housing Code in that he did:

> willfully or wantonly damage, mutilate or deface the exterior surface of any structure or building on any private or public property, 1422 Midlothian Blvd. Youngstown, Ohio 44502, by placing thereon any marking, carving or graffiti, or, being the owner of said property, did fail to restore said surface to an approved state of maintenance and repair, in violation of the International Property Maintenance Code.

ECF Dkt. #51 at 15. Plaintiff indicates in his complaint that for the third prosecution, he was charged with violating the same section 302.9 of the IPMC as incorporated into the Youngstown Housing Code. ECF Dkt. #28 at 10. The language of that charge mirrors that in the second complaint. ECF Dkt. #28 at 10.

Defendants contend that probable cause existed in which to bring the charges because Plaintiff had painted his building with different colors, designs and messages and he had erected

-10-

marquee signs to provide additional messages, which are all in violation of section 302.9 of the IPMC as incorporated into the Youngstown Housing Code. ECF Dkt. #56 at 18-19. Plaintiff offers no evidence to support a finding that probable cause was lacking for the charges instituted in the second and third prosecutions. This lack of showing of probable cause by Plaintiff is sufficient to bar his First Amendment retaliatory prosecution claims. However, the Court also notes that probable cause exists for the second and third prosecutions.

Attorney Anthony Farris filed an affidavit accompanying Defendants' motion for summary judgment indicating that he prosecuted violations of Youngstown's Housing Code in Youngstown Municipal Court as part of his duties as the Deputy Law Director for the City of Youngstown and former Chief Assistant Prosecutor. ECF Dkt. #56-4 at 2. He indicates that Youngstown's Housing Code Inspector, M.L. Campbell, sent Plaintiff a letter notifying him that a July 18, 2005 inspection of Plaintiff's building revealed that the building was in violation of section 302.9 of the IPMC because of the defacement to the exterior of the building. *Id*. at 3. Attorney Farris continues in his affidavit that he responded to a letter that Plaintiff sent Defendant Damiano regarding specific standards needed to bring his building into compliance with the IPMC and Attorney Farris responded by letter how Plaintiff was in violation of section 302.9 and what must be done to remedy the violation. *Id.* Attorney Farris further indicated that during this prosecution, he filed a brief in opposition to Plaintiff's motion to dismiss the charges filed against him and the Youngstown Municipal Court issued a Judgment overruling Plaintiff's motion to dismiss, finding that IPMC section 302.9 was constitutional on its face, no evidence existed that it was unconstitutionally applied, it was not vague and the complaint was not defective. *Id*. at 4.

As to the third prosecution, Defendant Damiano indicates in his affidavit that he prepared the complaint charging Plaintiff with violating section 302.9 of the IPMC as incorporated by the Youngstown Housing Code after he investigated Plaintiff's building from June 15, 2006 through June 30, 2006 and found that it was defaced and continued to be defaced during this period by markings and/or graffiti constituting a defacement in violation of section 302.9. ECF Dkt. #56-2 at 3. Prosecutor Macejko indicated that he attempted to contact Plaintiff and his attorney after an incident between a police officer and Plaintiff's domestic partner to request that Plaintiff abide by

their previous agreement and not paint anything on his building or the marquee. ECF Dkt. #56-3 at 5. Prosecutor Macejko attests that in the weeks and months after the June 15, 2006 encounter between the police officer and Plaintiff's partner, messages again invaded the exterior of Plaintiff's building and the marquee. *Id*. Prosecutor Macejko indicates that due to Plaintiff's unilateral decision to disregard their agreement as well as the Youngstown Municipal Court's prior opinion that section 302.9 was constitutional on its face and as applied in the case, he decided to charge Plaintiff and issue an arrest warrant. *Id*. at 6. Prosecutor Macejko relates that the charges against Plaintiff were dismissed by the Youngstown Municipal Court after that court found that the ordinance under which Plaintiff was charged was unconstitutionally vague. *Id.*

Similar to the second prosecution, Plaintiff offers no support for a showing of the absence of probable cause for the charges in the third prosecution. As Plaintiff asserts in his second amended complaint, it is true that the Youngstown Municipal Court ultimately found the ordinance under which Plaintiff was charged to be unconstitutionally vague. However, this does not negate a finding of probable cause in which to bring the charges *at the time* of Plaintiff's arrest. The United States Supreme Court has held that:

> Police are charged to enforce laws until and unless they are declared unconstitutional. Enactment of a law forecloses speculation by enforcement officers concerning its constitutionality-with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Michigan v. DeFillipo*, 443 U.S. 31, 37-38. Similarly in this case, Defendant Damiano, a housing code inspector whose duties included the enforcement of housing code provisions, prepared a complaint charging Plaintiff with violating a section of the IPMC that was incorporated into the Youngstown Housing Code that was later found unconstitutionally vague. At the time of the preparation and filing of the complaint, the constitutionality of the ordinance was not in question, because during the second prosecution, the Youngstown Municipal Court had upheld the constitutionality of the same section under which Plaintiff was charged in the second and third prosecutions.

Since probable cause existed for the charges against Plaintiff in the second and third

prosecutions and Plaintiff does not prove otherwise, the Court GRANTS summary judgment in favor of Defendants Williams and Damiano on Plaintiff's First Amendment retaliation claims and dismisses them with prejudice.

### B. FALSE ARREST–COUNT III

In the third count of his second amended complaint, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights by falsely arresting him in the third prosecution. ECF Dkt. #28 at 16-17. Plaintiff avers that at the time that Defendants procured the arrest warrant against him, Defendants knew or should have known that the ordinance under which they charged Plaintiff was unconstitutionally void for vagueness, since Plaintiff had put Defendants on notice in the second prosecution under the same ordinance that section 302.9 of the IPMC was unconstitutionally vague. *Id.* Plaintiff further states that the Youngstown Municipal Court found that section 302.9 was unconstitutionally vague. *Id*. at 17. He alleges that Defendants' issuance of the arrest warrant without probable cause resulted in his false arrest and detention. *Id*.

Defendants move for summary judgment on this claim, asserting that Plaintiff cannot show that Defendant Williams had any involvement in his arrest or prosecution relating to the third prosecution. ECF Dkt. #56 at 25; ECF Dkt. #56-5 at 2. Defendant Damiano asserts that while he did swear out the complaint against Plaintiff for the third prosecution, he had no involvement in Plaintiff's arrest or in the decision to issue the arrest warrant. *Id*.; ECF Dkt. #56-2 at 3.

Plaintiff comes forward with no evidence showing that Defendant Williams was involved in his arrest or subsequent prosecution in the third prosecution. Nor does he show that Defendant Damiano was involved in the issuance of the arrest warrant or the actual arrest of Plaintiff for the third prosecution. Nevertheless, even if he could, Plaintiff's false arrest claim pursuant to § 1983 must fail. "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Brooks v. Rothe*, ---F.3d ---, 2009 WL 2568189, (6th Cir. 2009), quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007), quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)).

Plaintiff indicates in his second amended complaint that he was arrested for violating section 302.9 of the IPMC as incorporated into the Youngstown Housing Code in the third prosecution, the same section that he was charged with violating in the second prosecution, which provided that Plaintiff did

> willfully or wantonly damage, mutilate or deface the exterior surface of any structure or building on any private or public property, 1422 Midlothian Blvd. Youngstown, Ohio 44502, by placing thereon any marking, carving or graffiti, or, being the owner of said property, did fail to restore said surface to an approved state of maintenance and repair, in violation of the International Property Maintenance Code.

ECF Dkt. #28 at 10; ECF Dkt. #51 at 15. He asserts that probable cause was lacking because he had placed Defendants on notice in the second prosecution under the same IPMC section that he considered this section unconstitutionally void for vagueness. The Court rejects this assertion. Prosecutor Macejko and Attorney Farris both indicate in affidavits attached to Defendants' motion for summary judgment that the Youngstown Municipal Court issued a judgment on February 27, 2006 during the second prosecution of Plaintiff overruling Plaintiff's motion to dismiss the charge against him and finding that section 302.9 was constitutional. ECF Dkt. #56-3 at 3; ECF Dkt. #56-4 at 4. Plaintiff provides no evidence to contradict these assertions. Moreover, as explained above, a finding of unconstitutionality of section 302.9 of the IPMC as incorporated into the Youngstown Housing Code after Plaintiff's arrest does not invalidate or otherwise make wrongful his initial arrest on these charges. *DeFillipo*, 443 U.S. 31, 37-38.

For these reasons, the Court finds that Plaintiff has failed to establish a lack of probable cause for his arrest and Defendants had probable cause in which to arrest Plaintiff for the violation of section 302.9 of the IPMC as incorporated into the Youngstown Housing Code. His § 1983 claims for wrongful arrest therefore fail and Defendants Williams and Damiano are entitled to summary judgment on this claim.

### C. FEDERAL CLAIMS AGAINST DEFENDANT CITY OF YOUNGSTOWN

A plaintiff may sue a municipality under 42 U.S.C. § 1983 for a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, municipal liability cannot attach unless a constitutional violation is shown. *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th

Cir. 1996). Further, a municipality may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" or is "the moving force" behind an underlying constitutional violation. *Id.* at 694-695.

It appears from his second amended complaint that Plaintiff attempts to impose liability upon Defendant City of Youngstown through an official custom or policy theory based upon his allegations that Defendant Williams, as Mayor, is vested with the final authority to make official policy regarding whether to prosecute an individual based upon a violation of a city ordinance. ECF Dkt. #28 at 14. He further avers that Defendant City of Youngstown had a policy or custom of illegally punishing individuals for the content of their speech because it prosecuted him multiple times for exercising his right to free speech. *Id*. Plaintiff additionally alleges that Defendant City of Youngstown had a custom of tolerating, acquiescing, or tacitly approving such constitutional violations by its employees. *Id.*

The Court GRANTS Defendant City of Youngstown's motion for summary judgment as to these claims. ECF Dkt. #56. Since Plaintiff fails to show that Defendants Williams and Damiano violated his First Amendment rights by retaliating against him, Plaintiff's claims against Defendant City of Youngstown must fail as well. *Brennan,* 78 F.3d at 1158. Further, even if Plaintiff did establish his claims against Defendants Williams and Damiano, a municipality cannot be held liable merely because it employs a tort-feasor. *Monell*, 436 U.S. at 691. Plaintiff has not cited any authority supporting his complaint assertions that Defendant Williams is a final policy-maker or that Defendant Williams is the final decision-maker as to whether to prosecute violators of city ordinances. In fact, Prosecutor Macejko attested in his affidavit that it was his decision to prosecute Plaintiff. ECF Dkt. #56-3 at 5-6. Finally, Plaintiff points to no policy, practice or custom of retaliation by Defendant City of Youngstown. As pointed out by Defendants in their motion for summary judgment, Plaintiff was asked in an interrogatory to identify the policy, practice or custom under which liability could be imposed upon Defendant City of Youngstown and he identified Ohio Revised Code sections 733.34 and 733.35. ECF Dkt. #56 at 23; ECF Dkt. #56-6 at 8. However, these sections are inapplicable as they merely outline a mayor's supervisory powers and duties over

officers of the municipality and the mayor's general supervisory powers over each department and its officers and his duties relating to misconduct or complaints against officers and heads of departments. See Ohio Rev. Code. §§ 733.34, 733.35.

For these reasons, the Court GRANTS summary judgment in favor of Defendant City of Youngstown and dismisses Plaintiff's § 1983 claims against it with prejudice. ECF Dkt. #56.

### D. STATE LAW CLAIMS

Plaintiff's remaining claims of malicious prosecution, two counts of abuse of process, and breach of contract are all state law claims. ECF Dkt. #28 at 18-19. "The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir.2002) (quoting 28 U.S.C. § 1367(a)). However, when, the district court dismisses all claims in which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state-law claims. *Id*. at 862; see also § 1367(c). Factors to consider in deciding whether to exercise supplemental jurisdiction include " 'judicial economy, convenience, fairness, and comity.' " *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir.1996) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). When the district court dismisses all federal claims before trial, the court should generally deny jurisdiction over the state-law claims. *See Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir.2007).

Here, the Court has dismissed all of Plaintiff's federal claims on summary judgment. The only claims left are those under Ohio law. Thus, the Court declines to exercise jurisdiction over Plaintiff's state-law claims of malicious prosecution, abuse of process, and breach of contract. The Court dismisses these claims without prejudice.

### IV. CONCLUSION

For the reasons stated herein, the Court GRANTS Defendants' motion for summary judgment and DISMISSES WITH PREJUDICE Plaintiff's § 1983 claims of First Amendment retaliation and false arrest against Defendants Williams, Damiano in their official and individual capacities and, consequently, DISMISSES WITH PREJUDICE those claims against Defendant City of Youngstown

as well. ECF Dkt. #56. The Court further DISMISSES WITHOUT PREJUDICE Plaintiff's state law claims of malicious prosecution, abuse of process and breach of contract.

    IT IS SO ORDERED.


DATE: September 28, 2009                                  */s/ George J. Limbert*
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE